RECEIVED
JUL 2 8 2009
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
         DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHN M. STEVENSON<br>Plaintiff | No. **A09CA 566SS**<br>Jury |
| V. | |
| The Texas Department of State Health Services and The Texas Department of Aging and Disability Services [hereinafter collectively referred to as "MHMR"]; Dr. Jeffery Josephs, Individually and as an Employee of MHMR; The Housing Authority of the City of Austin [HACA]; MS. Sylvia Blanco, Individually and as an Employee of HACA<br>   Defendants | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW Plaintiff, John M. Stevenson ("JMS"; "Stevenson"; "Plaintiff") and files this Original Complaint against The Texas Department of State Health Services and The Texas Department of Aging and Disability Services [Formerly The Texas Department of Mental Health and Mental Retardation]; Dr. Jeffery Josephs, Individually and as an Employee of MHMR; The Housing Authority of the City of Austin [HACA]; Ms. Sylvia Blanco, Individually and as an Employee of HACA.

The Texas Department of Mental Health and Mental Retardation [TDMHMR] ceased operations on September 1, 2004. The Community Mental Health Services formerly provided by TDMHMR are now provided through the Texas Department of State Health Services. The Mental Retardation Services formerly provided by TDMHMR are now provided through The Texas Department of Aging and Disability Services. For convenience, these entities shall be herein collectively referred to as "MHMR".

## I.
## PARTIES

1. The Plaintiff is a resident of Austin, Travis County, Texas.

2. The Texas Department of State Health Services [DSHS] is a state public entity and is an agency of the Texas Health and Human Services System. DSHS may be served with process by serving its Commissioner, David L. Lakey, MD at 701 West 51st Street; Austin, Texas 78751.

3. The Texas Department of Aging and Disability Services [DADS] is a state public entity and is an agency of the Texas Health and Human Services System. DADS may be served with process by serving its Commissioner, Ms. Adelaide Horn at 701 West 51st Street: Austin, Texas 78751.

4. Dr. Jeffery Josephs is an individual person and may be served at 1631-D East 2nd Street; Austin, Texas 78702.

5. The Housing Authority of the City of Austin [HACA] is a public agency and may be served with process by serving its President and CEO, Mr. James L. Hargrove, at P.O. Box 6159; Austin, Texas 78762-6159.

6. Ms. Sylvia Blanco is an individual person and may be served at HACA; P.O. Box 6159; Austin, Texas 78762-6159.

## II.

## JURISDICTION AND VENUE

7. This is a civil action for damages brought pursuant to the United States Constitution; 42 U.S.C. sections 1983 and 1988. And is brought for the unauthorized disclosure of confidential [by law] health information in violation of the U.S. Health Insurance and Portability Act [HIPAA]; the Privacy Rule [Title 45 of the Code of Federal Regulations] as formulated by the U.S Department of Health and Human Services; the U.S. Constitution; the Texas Constitution; various federal and state statutes and common law.

8. This court has jurisdiction over these claims pursuant to Article III, Section 1 of the Constitution of the United States and 28 U.S.C. Section 1331 and 1343.

9. The Defendants are also liable to the Plaintiff pursuant to the laws of the State of Texas. Said claims are hereby brought under the supplemental and ancillary jurisdiction of this Court under 28 U.S.C. Section 1367(a).

10. Venue is properly established in this judicial district pursuant to 28 U.S.C. Section 1391(b) in that all actions complained of by Plaintiff occurred in Austin, Travis County, Texas. Therefore, venue is proper in the United States District Court for the Western District of Texas; Austin Division.

### III.
### FACTS

11. Plaintiff brings this suit to recover for damages caused by Defendants, jointly and severally, primarily for the unauthorized solicitation and disclosure, in detail, of Plaintiff's confidential personal health information.

12. Plaintiff is a 66 year old individual who is a recovering alcoholic and has been sober and in a recovery program since March 1985. It is an established fact that one's addiction to alcohol is "... an outward symptom of a much more serious underlying illness." In the case of Plaintiff,

his underlying illness as diagnosed by several psychiatrists is "severe clinical depression." Plaintiff's depression is so severe he has been determined to be disabled by the State of Texas and has been so classified.

13. Plaintiff has received treatment for his severe depression since the late 1980's, early 1990's. Said treatment has been almost totally by and through MHMR.

14. In mid-late 2002, Plaintiff moved to Austin, Texas. He immediately went to MHMR to continue treatment from them for his mental illness. Plaintiff was either initially or soon thereafter assigned to Dr. Tiffany Ballard as his treating psychiatrist. Plaintiff was prescribed various medications, provided some counseling and was directed to pursue a prevention oriented program of exercise and the taking of various health enhancing supplements.

15. In or about early 2005, Dr. Ballard left MHMR. A Dr. Jeffery Josephs was susequently assigned as Plaintiff's treating physician. Even though he somewhat changed which drugs were prescribed, Dr. Josephs continued to prescribe various drugs for Plaintiff's treatment program. He also prescribed counseling, but available counseling at MHMR was, and is, very limited. In addition, Dr. Josephs and Plaintiff discussed on numerous occasions the fact that both strongly believed in illness prevention oriented treatment programs that included exercise programs and the taking of various health enhancing supplements. Therefore, Dr. Josephs specifically directed Plaintiff to engage in an exercise program and to take various supplements.

16. In or about October 2005, Plaintiff moved into a Housing Authority of the City of Austin [HACA] housing project—the Gaston Place Apartments at 1941 Gaston Place # 107.

17. As part of the HACA procedure for residency, the monthly rental amount is a percentage of a tenant's effective annual income. Since this income could change over a period of time,

HACA recalculated a tenant's effective annual income and resulting monthly rental amount annually.

18.     When calculating a tenant's effective annual income, all out-of-pocket amounts that a tenant paid for items that were prescribed as part of the tenant's medical treatment program could be deducted as expenses from gross income. If they are prescribed, this includes the cost of health club memberships and prevention oriented supplements.

19.     Plaintiff was notified in the summer of 2006 that it was necessary to re-calculate his effective annual income and, therefore, monthly rental amount for the October 2006-September 2007 period. In order to receive credit for the out-of-pocket cost of his health club membership, Plaintiff requested that Dr. Josephs provide him a written prescription for Dr. Josephs' earlier directions to engage in an exercise program as part of Plaintiff's medical treatment program. Dr. Josephs prescribed that Plaintiff was ". . . to use the services of a health club or gymnasium to maintain his state of mental and physical health, to reduce stress and increase alertness." Due to this prescription [Exhibit "A"], Plaintiff was able to deduct this expense and his resulting monthly rental amount was, therefore, significantly lower. Since this item was an ongoing part of Plaintiff's medical treatment program, the prescription was open-ended; did not expire.

20.     In the summer of 2007, Plaintiff was notified by HACA that it was necessary to re-calculate his effective annual income and, therefore, monthly rental amount for the October 2007 to November 2008 time period. Since Dr. Josephs and Plaintiff had agreed as to which supplements he should be taking, Plaintiff asked Dr. Josephs for a prescription that verified that these prevention oriented supplements from the Nikken Company were a necessary part of Plaintiff's medical treatment program. Dr. Josephs provided Plaintiff with such a prescription [Exhibit "B"]; and, in said prescription, clarified that these supplements were a "medical

necessity." Since these items too were an ongoing part of Plaintiff's medical treatment program, the prescription was open-ended; did not expire. Since the earlier prescription for the health club membership was ongoing, it was not required that Plaintiff get a new prescription.

21.     In the calculation of Plaintiff's effective annual income for the October 2007 to November 2008 time period, both the cost of the health club and the cost of the supplements were deducted from gross income. This caused Plaintiff's monthly rental amount to be even more substantially lower.

22.     In the summer of 2008, Plaintiff was notified that it was necessary to calculate his effective annual income for the October 2008 to November 2009 time period. Plaintiff submitted both the health club prescription and prevention oriented supplement prescription as items that were being paid for out-of-pocket and should, therefore, be deducted from gross income in the calculation of his effective annual income.

23.     Initially, HACA refused to give Plaintiff credit for either of these prescribed out-of-pocket expenses in the calculation of his effective annual income. After Plaintiff challenged HACA on this matter, they agreed to allow the deduction for the health club membership but not for the prescribed supplements even though both prescriptions did not expire. HACA provided no explanation for their decision.

24.     Plaintiff continued to protest HACA's not giving him credit for the prescribed supplements. As part of his protest, Plaintiff refused to pay the incorrect rent amount that did not give him credit for the cost of the prescribed supplements. Plaintiff did, however, offer to pay the amount that was correct as per his calculations since it allowed for the cost of the prescribed supplements. HACA refused to accept the amount offered by Plaintiff and proceeded with eviction proceedings wrongfully based on Plaintiff's not paying rent.

25.  It was at this point that Plaintiff determined that this was not just a dispute as to monthly rental amount. It seems that HACA is very much against giving tenants credit for any out-of-pocket expenses that result from prevention oriented medical treatment programs. In order to prevent a tenant's correctly deducting these actual out-of-pocket prevention oriented medical expenses, HACA pursues a rather elaborate scheme.

26.  As part of their strategy to prevent Plaintiff from receiving credit for said medical expenses in the calculation of his effective annual income, Ms. Sylvia Blanco, V.P. of HACA, other HACA employees and an attorney representing HACA [herein collectively referred to as HACA, et al] contacted Dr. Jeffery Josephs and other MHMR personnel who were involved in treating Plaintiff. HACA, et al represented that they had a release from Plaintiff that waived his Doctor-Patient confidentiality and gave them the right to contact MHMR and discuss Plaintiff's medical-healthcare situation. HACA did not have any such release and knew they did not have any such release. Therefore, their actions were clearly in violation of HIPAA, the Privacy Rule, the U.S. and Texas Constitutions, various other federal and state statutes and common law.

27.  In addition, MHMR was well aware that they did not have any release and they must have a release from Plaintiff before they could even remotely discuss Plaintiff's confidential medical-health situation with HACA and/or any other 3rd party. Even though it was clearly shown on the MHMR computer files that they did not have any type of release from Plaintiff, it is an absolute fact that, during October-November 2008 Dr. Jeffery Josephs of MHMR talked with Ms. Blanco of HACA and specifically discussed in detail Plaintiff's personal health information that is confidential by law. Their doing so was a knowing, intentional violation of Plaintiff's rights pursuant to the Health Insurance Portability and Accountability Act [HIPAA]

and the resulting Privacy Rule [45 CFR et seq], the U.S. and Texas Constitutions, other federal and state statutes and common law.

28.     As a further violation of HIPAA, the Privacy Rules and others, Dr. Josephs on November 24, 2008 faxed to Sylvia Blanco an "Informational Progress Note" ["IPN"] that specifically verifies their discussions; discloses confidential health info on Plaintiff; wrongfully denies that he ever wrote prescriptions for the supplements.

29.     Once HACA had Dr. Josephs' IPN in hand they filed an eviction lawsuit against Plaintiff in the Justice of the Peace Court; Precinct 1: Travis County, Texas; Judge Richard E. Scott on December 3, 2008. Even with this suit filed and Dr. Josephs' IPN in hand, HACA, et al continued to contact MHMR personnel and request Plaintiff's confidential healthcare information and to fraudulently represent that they had a release from Plaintiff.

30.     On February 19, 2009, a jury trial was commenced on HACA's eviction lawsuit [herein sometimes referred to as "JP Court Trial"]. The first witness for HACA was Dr. Jeffery Josephs of MHMR. Dr. Josephs was accompanied by an attorney, Ms. Lisa Ott Laky, who represented that she was general counsel for MHMR. Ms. Laky brought to the Court's attention that Dr. Josephs could not testify without either the Court's ordering him to do so or Plaintiff's agreeing to allow him to do so. Ms. Laky presented copies of the federal statute that so stated. Obviously MHMR knew a release [or court order] from Plaintiff was needed and knew that they did not have such release.

31.     The Court ordered Dr. Josephs to testify and Plaintiff, expecting Dr. Josephs to be truthful, gave his permission.

32.     When Dr. Josephs took the stand, he specifically verified that he had discussed Plaintiff's confidential personal medical-health information at length with Ms. Blanco at HACA.

33. During the questioning of Dr. Josephs, the IPN was introduced into evidence. Dr. Josephs verified that he had written and sent it. This was the first time that Plaintiff had any knowledge whatsoever that said IPN existed. It was also the first time that Plaintiff became aware that Dr. Josephs had without authorization discussed Plaintiff's confidential personal health information with Ms. Blanco at HACA.

34. When Plaintiff challenged him as to the false statement in the IPN that he had not written any prescriptions for the supplements, Dr. Josephs' lied under oath and said that he never wrote any such prescriptions. When questioned by Plaintiff, he specifically denied that he wrote the prescription attached hereto as Exhibit "B".

35. Judge Scott refused to allow Plaintiff to enter the prescription [Exhibit "B"] into evidence and question Dr. Josephs as to his false testimony.

36. Due substantially to Dr. Josephs' false testimony, the jury ruled against Plaintiff; in favor of HACA. This decision eventually led to the Plaintiff being forcefully evicted from his 1941 Gaston Place # 107 residence.

37. Subsequent to the determination at the JP Court Trail that Dr. Josephs and MHMR had breached the Plaintiff's doctor-patient confidentiality, Plaintiff was emotionally, mentally devastated. Since he had no other avenue to receive treatment for his now severely aggravated severe clinical depression, Plaintiff had no choice but to continue his treatment at MHMR. Therefore, Plaintiff requested that he be assigned to a different psychiatrist. Plaintiff was assigned to a Dr. Khan. Plaintiff further requested that MHMR provide him some type of therapeutic counseling due to the severe mental, emotional damages that Dr. Josephs' and MHMR's behavior had caused Plaintiff. MHMR chose to deliberately, indifferently ignore this request.

## CLAIMS AND CAUSES OF ACTION

**Violation of the U.S. Health Insurance Portability and Accountability Act; the Privacy Rule [Title 45 of the Code of Federal Regulations] as formulated by the U.S. Department of Health and Human Services; the U.S. Constitution; the Texas Constitution; various federal and state laws; common law**

38. Dr. Jeffery Josephs, MHMR, Sylvia Blanco and HACA violated the terms and provisions of HIPAA; the Privacy Rule; the U.S. Constitution; the Texas Constitution; various federal and state laws; common law by violating Plaintiff's Doctor-Patient confidentiality.

39. The violation is further shown by the fact that Dr. Jeffery Josephs, MHMR, Ms. Sylvia Blanco and HACA were all aware that it was necessary for Plaintiff to have waived his rights to Doctor-Patient confidentiality for them to discuss Plaintiff's health situation at all. They were all well aware that no such authorization existed. As illustrated by their behavior at the JP Court Trial, the MHMR records for Plaintiff clearly show that no such authorization existed.

40. Ms. Blanco and HACA were aware that they had no documentation whatsoever from Plaintiff that authorized them to contact Dr. Josephs and MHMR. Therefore, it was a violation of the law for them to knowingly, intentionally contact Dr. Josephs and MHMR and request information as to Plaintiff's confidential by law personal health records. The mere contacting without authorization is a violation of Plaintiff's rights to privacy as protected by the Privacy Act, the U.S. Constitution, the Texas Constitution and other state and federal laws and rules.

41. MHMR's involvement is intensified by the fact that they have a policy to allow the acts of commission as herein pled to occur and to continue to occur. MHMR has an established custom, and is allowing said custom to grow and continue, to allow these acts of commission to occur and to continue to occur.

42. HACA's involvement is intensified by the fact that they have a policy to allow the acts of commission as herein pled to occur and to continue to occur. HACA has an established custom, and is allowing said custom to grow and continue, to allow these acts of commission to occur and to continue to occur.

43. Dr. Josephs', MHMR's, Ms. Sylvia Blanco's and HACA's actions were knowingly, intentionally performed with malice and deliberate indifference to the federally-protected and state-protected rights of Plaintiff.

## COMMON LAW CLAIMS

### Intentional Infliction of Emotional Distress

44. The conduct aforesaid of the Defendants caused directly and proximately Plaintiff to suffer severe emotional distress. Since Defendants were well aware that their conduct would cause Plaintiff severe emotional distress, their actions were clearly calculated to intentionally inflict emotional distress upon Plaintiff. The Defendants' actions were intentional, reckless and their conduct was extreme and outrageous.

45. The Defendants acted with deliberate indifference to Plaintiff's federal and state protected constitutional and statutory rights in their herein set forth malicious misconduct. The Defendants' actions in doing this were intentional, reckless and their conduct was extreme, outrageous and beyond the bounds of civilized behavior. They chose to knowingly violate a principle that is the very basis for a civilized medical system. If the patient is deprived of his right to doctor-patient confidentiality, our nation's medical system will perish.

46. The Defendants' conduct constitutes intentional infliction of emotional distress. As a direct and proximate result of the Defendants' knowing, intentional, malicious actions and

misconduct, Plaintiff was caused, and is continuing to suffer, severe emotional and mental distress, physical afflictions and other irreparable damages.

### Invasion of Privacy by Way of Intrusion

47. The Defendants' conduct constitutes an invasion of the Plaintiff's privacy. By way of intrusion, the Defendants intentionally intruded upon the solitude, wellbeing and private affairs of the Plaintiff in a manner that would have been highly offensive to any person. The Defendants' intrusion was knowingly, intentionally unreasonable, unjustified and/or unwarranted.

### RESPONDEAT SUPERIOR

48. Apparently at all relevant times herein addressed, Defendant Dr. Jeffery Josephs was acting on behalf of MHMR; within the scope and course of his employment or official duties with MHMR. Virtually all of his actions were in furtherance of the duties of his office and employment with MHMR. Therefore, virtually all actions of Dr. Jeffery Josephs are attributable to MHMR and render MHMR liable for all damages suffered by Plaintiff under RESPONDEAT SUPERIOR.

49. Apparently at all relevant times herein addressed, Defendant Ms. Sylvia Blanco was acting on behalf of HACA; within the scope and course of her employment or official duties with HACA. Virtually all of her actions were in furtherance of the duties of her office and employment with HACA. Therefore, virtually all actions of Ms. Sylvia Blanco are attributable to HACA and render HACA liable for all damages suffered by Plaintiff under RESPONDEAT SUPERIOR.

### DAMAGES

### Compensatory Damages

50.  As a direct and proximate result of the acts of the Defendants, the Plaintiff has been damaged in a sum exceeding $500,000 which is in excess of the minimum jurisdictional limits of this court. Plaintiff has suffered severe personal injuries which include physical pain, mental anguish, mental afflictions and physical afflictions. Due to the nature and severity of these injuries Plaintiff will, with reasonable probability, continue to suffer from these injuries for the rest of his life.

### Punitive; Exemplary Damages

51.  Defendants' conduct herein complained of and made the basis of this suit was knowing, intentional, willful, malicious, oppressive, wanton, callous and deliberately indifferent to Plaintiff's rights and the rights of the public in general. If this behavior is allowed to continue, it will have a devastatingly negative effect on future actual and prospective patients. The very existence of this type of behavior will have a negative effect on our nation's medical system and the public in general.

52.  Therefore, Plaintiff is entitled to recover punitive damages. These damages should be in an amount that is substantial enough to make a public spectacle of Defendants. It should be absolutely clear to the Defendants, other potential wrongdoers in the medical community and the public in general that such conduct *will not be tolerated.*

53.  In addition, it is hereby requested that this court issue an injunction that prohibits Defendants from continuing to engage in the type of behavior addressed herein and sanctions them severely should they choose to violate said injunction.

### JURY DEMAND

54.  The Plaintiff demands a trial by jury on all issues in this case.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendants be cited to appear and answer and that upon final hearing, the Court award the Plaintiff the following:

1. Judgment against Defendants, Jointly and Severally, for actual damages in an amount exceeding $500,000;

2. Judgment against Defendants, Jointly and Severally, for punitive damages in an amount adequate to prevent Defendants from engaging in the same and/or similar behavior; and adequate to clarify to the public in general that this type of despicable behavior will not be tolerated;

3. Issuance by this Court of an injunction, with severe sanctions for non-compliance, that prevents Defendants from continuing to engage in the same, and/or similar, behavior as is addressed herein;

4. All costs of court;

5. Reasonable attorneys for both consultation and representation;

6. Pre-judgment and post-judgment interest as allowed by law;

7. Any other relief to which Plaintiff is entitled be it in general, in law or in equity.

This Plaintiff's Original Complaint is respectfully submitted on this the 28th day of July 2009.

John M. Stevenson, Plaintiff
P.O. Box 2452
Austin, Texas 78768
512-560-0233
jmslitigation@yahoo.com

"A"



**JEFFREY JOSEPHS, M.D.**
1430 COLLIER STREET
AUSTIN, TX 78704-2911

(512) 804-2600

DEA # BJ 2098350

NAME John Stevenson    6/5/1943
AGE

ADDRESS _____ DATE 7/25/2006

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞ John Stevenson has medical indication to use the services of a health club or gymnasium to maintain his state of mental and physical health, to reduce stress, and increase alertness.

Refill _____ times

☐ Label

_____ Joseph MD
Signature

A generically equivalent drug product may be dispensed unless the practitioner hand writes the words 'Brand Necessary' or 'Brand Medically Necessary' on the face of the prescription.

♻

5DPS1128392

"B"

JEFFREY JOSEPHS, M.D.
1430 COLLIER STREET
AUSTIN, TX 78704-2911

(512) 804-3600                                    DEA # BJ 2098350    DOB

NAME John Stevenson                              6/5/1943
                                                    AGE
ADDRESS _____    DATE 9/18/2007

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞ Mr. Stevenson needs the following as a medical necessity: Kenzen Ciaga, Jade GreenZymes, Bio-directed Joint cm formula, Bio-directed mental Clarity, Kenzen Creamy Protein Shakes. Total cost approx $200.00 per month.

Refill _____ times

☐ Label

_____ Josephs MD
                Signature

A generically equivalent drug product may be dispensed unless the practitioner hand writes the words 'Brand Necessary' or 'Brand Medically Necessary' on the face of the prescription.

♻

5DPS1128392